**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | |
|---|---|
| TAWANDA CARPRUE,            ) | |
|     Plaintiff,            ) | |
|   )     | |
| v.            )     | CAUSE NO.: 2:12-CV-288-JEM |
|   ) | |
| CAROLYN W. COLVIN, Acting Commissioner   ) | |
| of the Social Security Administration,            ) | |
|     Defendant.            ) | |

**OPINION AND ORDER**

This matter is before the Court on a Complaint [DE 1], filed by Plaintiff Tawanda Carprue on July 25, 2012, and a Plaintiff's Brief in Support of Reversal of Commissioner's Final Decision [DE 18] filed by Plaintiff on January 10, 2013. Plaintiff requests that the decision of the Administrative Law Judge be reversed and remanded for further proceedings. On April 18, 2013, the Commissioner filed a response, and on April 25, 2013, Plaintiff filed a reply. For the following reasons, the Court grants Plaintiff's request for remand.

**PROCEDURAL BACKGROUND**

On October 16, 2008, Plaintiff filed an application for supplemental security income ("SSI") with the U.S. Social Security Administration ("SSA") alleging that she became disabled on December 31, 2007. Plaintiff's application was denied initially and upon reconsideration. On January 11, 2011, Administrative Law Judge ("ALJ") Patrick J. Rhoa held a hearing at which Plaintiff, with an attorney, and a vocational expert ("VE") testified. On January 25, 2010, the ALJ issued a decision finding that Plaintiff was not disabled.

The ALJ made the following findings under the required five-step analysis:

1. The claimant has not engaged in substantial gainful activity since the application date of October 16, 2008. (20 CFR 416.971 *et seq.*).

2. The claimant had severe impairments: diabetes, asthma, arthritis, hypertension, sleep apnea, obesity, chronic pain syndrome, and depression (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals any of the listed impairments in 20 CFR 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. The claimant has the residual functional capacity to perform light work, except the claimant is not able to work around dangerous machinery, pulmonary irritants such as fumes, dust, odors, gasses and poorly ventilated areas or extreme heat or cold. The claimant is unable to use ladders, ropes or scaffolds or work around unprotected heights, and can use stairs occasionally. The claimant is limited to simple routine tasks due to moderate limitations in her concentration, persistence and pace.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

7. The claimant was 35 years old, defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

8. The claimant has limited education and is able to communicate in English (20 CFR 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (see SSR 82-41 and 20 CFR 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant could perform (20 CFR 416.969 and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, since October 16, 2008, the date the application was filed (20 CFR 416.920(g)).

On May 21, 2012, the Appeals Council denied Plaintiff's request for review, leaving the ALJ's decision the final decision of the Commissioner.

The parties filed forms of consent to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case. Therefore, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c) and 42 U.S.C. § 405(g).

**FACTS**

**A.     Background**

Plaintiff was 35 years old on the date her application was filed. She had not completed high school. She had past work as a babysitter, cashier, computer scanner, and hair stylist.

**B.     Medical and Mental Health Evidence**

Plaintiff was diagnosed with diabetes, asthma, arthritis, hypertension, sleep apnea, obesity, chronic pain syndrome, and depression.

Plaintiff frequently visited her doctors's office where she was seen by her physician, Dr. Adolphus Anekwe, or nurse practitioner Tonya Harvey, for a variety of physical and mental health concerns. On May 7, 2010, Ms. Harvey completed a form certifying that Plaintiff's mobility was permanently disabled. On January 6, 2011, Ms. Harvey completed a Medical Source Statement identifying limitations on Plaintiff's work-related activities and stating that the limitations had been present since November 14, 2006. The form completed by Ms. Harvey indicated that Plaintiff could occasionally lift and carry up to twenty pounds, could sit for thirty minutes, stand for fifteen minutes, and walk for ten minutes without interruptions, and, in an eight hour workday, could sit for a total of four hours, stand for a total of two hours, and walk for a total of two hours. She could occasionally operate foot controls, stoop and kneel, but could never climb ladders or scaffolds. She could occasionally push or pull with her right hand, but

3

never with her left. She could occasionally climb stairs and ramps or balance. She could never be exposed to unprotected heights, moving mechanical parts, dust, odors, and pulmonary irritants, or extreme temperatures, and was limited to moderate noise.

On March 16, 2009, August 14, 2009, and March 15, 2010, Dr. Anekwe[1] filled out forms indicating that Plaintiff was totally disabled from gainful employment because of her impairments, including COPD, asthma, chronic pain syndrome, non-insulin dependent diabetes, insomnia, anxiety disorder, obesity, and chronic sleep apnea.

**C.  Vocational Expert Testimony**

At the Administrative Hearing, James Lanier testified as a neutral vocational expert. The ALJ presented two hypothetical scenarios to the VE. In response, the VE testified that there was work available in the regional economy to a person with the limitations reflected in either scenario.

## STANDARD OF REVIEW

The Social Security Act authorizes judicial review of the final decision of the agency and indicates that the Commissioner's factual findings must be accepted as conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Thus, a court reviewing the findings of an ALJ will reverse only if the findings are not supported by substantial evidence or if the ALJ has applied an erroneous legal standard. *See Briscoe v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Substantial evidence consists of "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005) (quoting *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003)).

---

[1] The Court notes that the signature on some of the forms is illegible, but the forms are from Dr. Anekwe's office.

A court reviews the entire administrative record but does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ. *See Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Butera v. Apfel*, 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, the question upon judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is not whether the claimant is, in fact, disabled, but whether the ALJ "uses the correct legal standards and the decision is supported by substantial evidence." *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 618 (7th Cir. 2010); *Prochaska v. Barnhart*, 454 F.3d 731, 734-35 (7th Cir. 2006); *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)). "[I]f the Commissioner commits an error of law," the Court may reverse the decision "without regard to the volume of evidence in support of the factual findings." *White v. Apfel*, 167 F.3d 369, 373 (7th Cir. 1999) (citing *Binion v. Chater*, 108 F.3d 780, 782 (7th Cir. 1997)).

At a minimum, an ALJ must articulate his analysis of the evidence in order to allow the reviewing court to trace the path of his reasoning and to be assured that the ALJ considered the important evidence. *See Scott v. Barnhart*, 297 F.3d 589, 595 (7th Cir. 2002); *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995); *Green v. Shalala*, 51 F.3d 96, 101 (7th Cir. 1995). An ALJ must "'build an accurate and logical bridge from the evidence to [the] conclusion' so that, as a reviewing court, we may assess the validity of the agency's final decision and afford [a claimant] meaningful review." *Giles v. Astrue*, 483 F.3d 483, 487 (7th Cir. 2007) (quoting *Scott*, 297 F.3d at 595)); *see also O'Connor-Spinner*, 627 F.3d at 618 ("An ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his

conclusions."); *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001) ("[T]he ALJ's analysis must provide some glimpse into the reasoning behind [the] decision to deny benefits.").

## DISABILITY STANDARD

To be eligible for disability benefits, a claimant must establish that she suffers from a "disability" as defined by the Social Security Act and regulations. The Act defines "disability" as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). To be found disabled, the claimant's impairment must not only prevent her from doing her previous work, but considering her age, education, and work experience, it must also prevent her from engaging in any other type of substantial gainful activity that exists in significant numbers in the economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B); 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f).

When a claimant alleges a disability, Social Security regulations provide a five-step inquiry to evaluate whether the claimant is entitled to benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The steps are: (1) Is the claimant engaged in substantial gainful activity? If yes, the claimant is not disabled, and the claim is denied; if no, the inquiry proceeds to step two; (2) Does the claimant have an impairment or combination of impairments that are severe? If not, the claimant is not disabled, and the claim is denied; if yes, the inquiry proceeds to step three; (3) Do(es) the impairment(s) meet or equal a listed impairment in the appendix to the regulations? If yes, the claimant is automatically considered disabled; if not, then the inquiry proceeds to step four; (4) Can the claimant do the claimant's past relevant work? If yes, the claimant is not

disabled, and the claim is denied; if no, then the inquiry proceeds to step five; (5) Can the claimant perform other work given the claimant's RFC, age, education, and experience? If yes, then the claimant is not disabled, and the claim is denied; if no, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *see also Scheck v. Barnhart*, 357 F.3d 697, 699-700 (7th Cir. 2004).

At steps four and five, the ALJ must consider an assessment of the claimant's RFC. The RFC "is an administrative assessment of what work-related activities an individual can perform despite [his] limitations." *Dixon v. Massanari*, 270 F.3d 1171, 1178 (7th Cir. 2001) (citing SSR 96-8p, 1996 WL 374184 (July 2, 1996); 20 C.F.R. § 404.1545(a)) (other citations omitted). The RFC should be based on evidence in the record. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(3)). The claimant bears the burden of proving steps one through four, whereas the burden at step five is on the ALJ. *Zurawski*, 245 F.3d at 886; *see also Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

## ANALYSIS

**A.  Residual Functional Capacity**

Plaintiff argues that the ALJ did not properly evaluate the medical and mental health opinions in the record. The Commissioner argues that the ALJ's findings are supported by substantial evidence.

The RFC is an assessment of what work-related activities the claimant can perform despite her limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004); *see also* 20 C.F.R. §§ 404.1545(a)(1); 416.1545(a)(1). In evaluating a claimant's RFC, an ALJ is expected

7

to take into consideration all of the relevant evidence, including both medical and non-medical evidence. *See* 20 C.F.R. §§ 404.1545(a)(3); 416.945(a)(3). According to SSA regulations:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p at *7. Although an ALJ is not required to discuss every piece of evidence, he must consider all of the evidence that is relevant to the disability determination and provide enough analysis in his decision to permit meaningful judicial review. *Clifford*, 227 F.3d at 870; *Young*, 362 F.3d at 1002. In other words, the ALJ must build an "accurate and logical bridge from the evidence to his conclusion." *Scott*, 297 F.3d at 595 (quoting *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002)).

      1.     <u>Weight to Medical Providers</u>

Plaintiff argues that the ALJ did not conduct a proper evaluation of her RFC. She argues that the ALJ stated that he gave little weight to most of the medical source opinions in the record on the basis that they are not fully supported by the objective evidence, but does not identify what evidence he found reliable or otherwise provide enough information to determine how he arrived at Plaintiff's RFC. The Commissioner argues that the RFC was based on a review of the entire record and is supported by substantial evidence.

8

"A treating physician's opinion regarding the nature and severity of a medical condition is entitled to controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence in the record." *Gudgel*, 345 F.3d at 470 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). Being "not inconsistent" does not require that opinion be supported directly by all of the other evidence "as long as there is no other substantial evidence in the case record that contradicts or conflicts with the opinion." SSR 96-2p, 1996 WL 374188, at *3 (July 2, 1996). To be "substantial," conflicting evidence "need only be such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.*; *see also Schmidt*, 395 F.3d at 744.

If the ALJ declines to give a treating source's opinion controlling weight, she must still determine what weight to give it according to the following factors: the length, nature, and extent of the physician's treatment relationship with the claimant; whether the physician's opinions were sufficiently supported; how consistent the opinion is with the record as a whole; whether the physician specializes in the medical conditions at issue; and other factors, such as the amount of understanding of the disability programs and their evidentiary requirements or the extent to which an acceptable medical source is familiar with other information in the claimant's case. 20 C.F.R. §§ 404.1527(c)(2)(i)-(ii), (c)(3)-(6). "If the ALJ discounts the [treating] physician's opinion after considering these factors, [the Court] must allow that decision to stand so long as the ALJ 'minimally articulated' his reasons." *Elder v. Astrue,* 529 F.3d 408, 415 (7th Cir. 2008) (quoting *Berger v. Astrue*, 516 F.3d 539, 545 (7th Cir. 2008)); *see also Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011) ("[W]henever an ALJ does reject a treating source's opinion, a sound explanation must be given for that decision."); *Schmidt*, 496 F.3d at 842 ("An ALJ thus

may discount a treating physician's medical opinion if it . . . 'is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability.'") (quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004)).

In this case, the record includes several documents from long-term treating physician Dr. Anekwe stating that Plaintiff was completely disabled. The ALJ correctly noted that the ultimate disability finding is reserved to the Commissioner; however, an ALJ may not simply ignore an opinion that addresses a plaintiff's ability to work, but must "evaluate all the evidence in the case record to determine the extent to which the opinion is supported by the record." SSR 96-5p, 1996 WL 374183, at *3, *5 (July 2, 1996); *see also Hamilton v. Colvin*, 525 F. App'x 433, 439 (7th Cir. 2013) ("While the ALJ is right that the ultimate question of disability is reserved to the Commissioner, a treating physician's opinion that a claimant is disabled 'must not be disregarded.'") (quoting SSR 96–5p) (citing 20 C.F.R. § 416.927(e)(2)); *see also Roddy*, 705 F.3d at 636 ("Even though the ALJ was not required to give [the treating physician]'s opinion [that the claimant could not handle a full-time job] controlling weight, he was required to provide a sound explanation for his decision to reject it.").

The ALJ stated that he gave "little weight" to Dr. Anekwe's findings of disability on the grounds that he "provides no functional limitations to go along with his determination." AR 74. Earlier in his opinion, the ALJ identifies Dr. Anekwe as Plaintiff's primary physician, but does not describe the extent of the physician's treatment relationship with the claimant, how consistent his opinion was with the record as a whole, or how consistent the opinion was with the rest of Dr. Anekwe's extensive medical notes. The documents referred to by the ALJ that

include Dr. Anekwe's opinion of disability are single page documents indicating that Plaintiff is totally disabled from employment because of her multiple diagnoses. AR 310, 412. Although these specific pages do not contain any additional information about Plaintiff's diagnoses or treatment, the record contains scores of pages of treatment notes from Dr. Anekwe, including diagnosis and treatment for multiple disorders. Also included in the notes from Dr. Anekwe's office are pages describing Plaintiff's ability to work in more detail, indicating her inability to do even light duty work because of her impairments and listing side effects to her medication. *See, e.g.,* AR 289, 409. The ALJ does not mention these statements of Plaintiff's disability, nor that they do give more information about Plaintiff's functional limitations.

The ALJ also discounted the opinion of Tonya Harvey (misidentified in the ALJ's opinion as "Tonya Harding"), a nurse practitioner who worked at Broadway Medical with Dr. Anekwe. Ms. Harvey completed a medical source statement identifying Plaintiff's work-related limitations, and also opined that Plaintiff's mobility was permanently restricted. At the hearing, Plaintiff testified that she visited the Broadway Medical practice once per month, and saw either Dr. Anekwe or Ms. Harvey depending on who was working that day. Although Ms. Harvey is not an "acceptable medical source" whose opinion would be entitled to controlling weight, 20 CFR § 416.927, an ALJ must consider "all relevant evidence in an individual's case record," including opinions "from medical sources who are not 'acceptable medical sources,'" SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006), and must apply the same criteria to determine the weight given their opinions as is applied to the opinions of "acceptable medical sources." *Id.* at *4-5, s*ee also Phillips v. Astrue*, 413 Fed. App'x. 878, 884 (7th Cir. 2010) ("In deciding how

much weight to give to opinions from these 'other medical sources,' an ALJ should apply the same criteria listed in § 404.1527(d)(2).").

In this case, the ALJ discounted Ms. Harvey's statement that Plaintiff was totally disabled on the grounds that "the objective evidence does not fully support a permanent restriction of mobility." AR 74. The ALJ also gave only "some" weight to the Medical Source Statement completed by Ms. Harvey describing Plaintiff's limitations as a result of her multiple impairments. Again, the ALJ did not mention the length of time that Ms. Harvey treated Plaintiff, but discounted her opinion on the grounds that it was not fully supported by medical evidence.

The ALJ does not identify what medical evidence contradicts the opinions of Dr. Anekwe and Ms. Harvey, nor does he not identify any treating or examining medical source to whom he gives more than "some" weight. Although medical evidence "may be discounted if it is internally inconsistent or inconsistent with other evidence," *Knight*, 55 F.3d at 314 (citing 20 C.F.R. § 404.1527(c)) (other citations omitted), the ALJ "must provide a 'logical bridge' between the evidence and his conclusions." *O'Connor-Spinner*, 627 F.3d at 618. In this case, the ALJ failed to give controlling weight to the treating physician's opinion regarding the nature and severity of Plaintiff's impairments without identifying any inconsistencies with other substantial evidence in the record, nor did he identify any medical opinion from a treating or examining physician to which he gave greater weight. The ALJ failed to explain his reasoning and to build a logical bridge from the medical evidence, particularly the evidence provided by treating sources, to his conclusions.

2. Mental Health

Plaintiff argues that the ALJ failed to properly analyze the impact of her mental illness. There is no mental health assessment in the record, and Plaintiff argues that the ALJ came to his own independent psychiatric conclusions, ignoring or discounting the evidence of functional limitations. The Commissioner argues that Plaintiff does not point to any evidence indicating that her mental impairment would make her unable to perform simple routine tasks.

The Court is concerned by the ALJ's statements that Plaintiff "has never been treated by a mental health professional or a family doctor, despite her allegations of depression." AR 73. Plaintiff testified at the hearing that she had seen a counselor for her depression but stopped once her medication was regulated by her family doctor, and also testified that she took medication for claustrophobia. AR 41-42. The record reflects diagnoses and treatment for claustrophobia and anxiety disorder. *See, e.g,* AR 319, 332, 429. The ALJ did not specifically address these treatment notes, but stated that he gave Plaintiff "the benefit of the doubt that her depression has more than a minimal impact on her ability to perform basic work activities." AR 73. On remand, the ALJ is directed to identify the medical support for his conclusions about Plaintiff's mental abilities, and is reminded of his responsibility to contact medical sources for clarification or to obtain the opinion of an additional examining expert, if needed. *See* 20 C.F.R. § 416.919a(b).

3. Combination of Impairments

Plaintiff also argues that the ALJ failed to explain how he considered the limitations caused by Plaintiff's combination of impairments. "Although [] impairments may not on their own be disabling, that would only justify discounting their severity, not ignoring them

13

altogether. Moreover, . . . an ALJ must consider the combined effects of all of the claimant's impairments, even those that would not be considered severe in isolation." *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *see also Martinez v. Astrue*, 630 F.3d 693, 698 (7th Cir. 2011) ("Even if each problem assessed separately were less serious than the evidence indicates, the combination of them might be disabling."); *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008) ("[A]n ALJ is required to consider the aggregate effects of a claimant's impairments, including impairments that, in isolation, are not severe.") (citing 20 C.F.R. § 404.1523; *Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003)).

In particular, Plaintiff argues that her obesity has a significant impact on her other impairments. Plaintiff has a body mass index ("BMI") of 58.6. Any BMI of 40 or greater is considered "extreme" obesity. SSR 02-1p, 2002 WL 34686281, at *2 (Sept. 12, 2002). Social Security Ruling 02-1p requires an ALJ to consider obesity as an impairment and the exacerbating effects of a claimant's obesity on her other conditions when arriving at the RFC assessment, even if the obesity is not itself a severe impairment. *Hernandez v. Astrue*, 277 F. App'x 617, 624 (7th Cir. 2008); *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005) (finding that, even if obesity is not a severe impairment itself and "merely aggravates a disability caused by something else[,] it still must be considered for its incremental effect on the disability"). Ruling 02-1p provides that in evaluating obesity in assessing RFC, "[a]n assessment should also be made of the effect obesity has upon the individual's ability to perform routine movement and necessary physical activity within the work environment." SSR 02-1p, at *6. Further, Ruling 02-1p explains that an ALJ's RFC determination must consider an individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and

continuing basis. *Id.* (citing SSR 96-8p). On remand, the ALJ is directed to consider the combination of Plaintiff's impairments, even those that are not severe in isolation, and to specifically address the impact her obesity has on her other impairments.

This matter is being remanded for a new RFC. On remand, the ALJ is directed to fully consider each of the Plaintiff's alleged impairments, alone and in combination, and provide a logical bridge from the evidence to his conclusion, including a description of the medical and mental health evidence on which he bases his determination and an explanation of how he weighed the opinions of Plaintiff's treating and examining healthcare providers.

**B.     Credibility Assessment**

Plaintiff argues that the ALJ improperly evaluated Plaintiff's credibility. The Commissioner argues that the ALJ's opinion is supported by substantial evidence.

The ALJ must weigh the claimant's subjective complaints, the relevant objective medical evidence, and any other evidence of the following factors:

> (i) [The claimant's] daily activities;
> (ii) The location, duration, frequency, and intensity of [] pain or other symptoms;
> (iii) Precipitating and aggravating factors;
> (iv) The type, dosage, effectiveness, and side effects of any medication . . . ;
> (v) Treatment . . . for relief of [] pain or other symptoms;
> (vi) Any measures . . . used to relieve your pain or other symptoms . . . ; and
> (vii) Other factors concerning [] functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529(c)(3). In making a credibility determination, Social Security Ruling 96–7p states that the ALJ must consider the record as a whole, including objective medical evidence, the claimant's statement about symptoms, any statements or other information provided by

treating or examining physicians and other persons about the conditions and how they affect the claimant, and any other relevant evidence. *See* SSR 96-7p, 1996 WL 374186 (Jul. 2, 1996).

An ALJ is not required to give full credit to every statement of pain made by the claimant or to find a disability each time a claimant states he or she is unable to work. *See Rucker v. Chater*, 92 F.3d 492, 496 (7th Cir. 1996). However, Ruling 96-7p provides that a claimant's statements regarding symptoms or the effect of symptoms on his ability to work "may not be disregarded solely because they are not substantiated by objective evidence." SSR 96-7p at *6. An ALJ's credibility determination is entitled to substantial deference by a reviewing court and will not be overturned unless the claimant can show that the finding is "patently wrong." *Prochaska*, 454 F.3d at 738.

Plaintiff argues that the ALJ did not thoroughly address Plaintiff's chronic pain syndrome and chronic back pain, impermissibly failing to investigate the full extent of Plaintiff's pain. Plaintiff argues that the ALJ failed to analyze Plaintiff's work history, medical history, daily activities, and testimony as they relate to her pain, and failed to fully consider the nature of her pain and effectiveness of her pain medication. The Commissioner argues that the ALJ thoroughly analyzed all of the relevant factors, and substantial evidence supports his assessment.

In this case, the ALJ found Plaintiff's complaints about her pain not fully credible because she has received "limited, conservative treatment" and "has never undergone physical therapy or an evaluation by a specialist." AR 72. The ALJ also discounted Plaintiff's reported impairments because she "does not seek out treatment on a regular basis and does not attempt to lose weight." AR 73.

When considering noncompliance with treatment as a factor in determining whether a claimant's statements regarding her symptoms are credible, an ALJ is also required to make a determination about whether noncompliance with treatment is justified and develop the record accordingly. *See* SSR 96-7p at *7; *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."); *Craft*, 539 F.3d at 679 ("[T]he ALJ 'must not draw any inferences' about a claimant's condition from this failure [to follow a treatment plan] unless the ALJ has explored the claimant's explanations as to the lack of medical care.") (quoting SSR 96-7p).

The record indicates that Plaintiff attends medical appointments at least monthly, if not more frequently, and takes numerous medications daily. The ALJ does not identify any recommendations that Plaintiff undergo physical therapy or any referrals to a specialist that Plaintiff did not follow up on. The ALJ's statement about lack of treatment seem inconsistent with the vast number of treatment notes in the record and, as Plaintiff argues, the ALJ did not ask Plaintiff about her supposed failure to seek treatment. *See Craft*, 539 F.3d at 679 ("Here, although the ALJ drew a negative inference as to [the plaintiff]'s credibility from his lack of medical care, she neither questioned him about his lack of treatment or medicine noncompliance during that period, nor did she note that a number of medical records reflected that [the plaintiff] had reported an inability to pay for regular treatment and medicine.").

The Court is also concerned by the weight given by the ALJ to Plaintiff's failure to lose weight. The ALJ does not identify any prescribed treatment for weight loss with which Plaintiff

17

was noncompliant. The Regulations are clear that when it comes to weight loss, "[i]f an individual who is disabled because of obesity . . . does not have a treating source who has prescribed treatment for the obesity, there is no issue of failure to follow prescribed treatment. The treatment must be prescribed by a treating source" and "[a] treating source's statement that an individual 'should' lose weight or has 'been advised' to get more exercise is not prescribed treatment." SSR 02-1p, at *9. Furthermore, "[w]hen a treating source has prescribed treatment for obesity, the treatment must clearly be expected to improve the impairment to the extent that the person will not be disabled. . . . The obesity must be expected to improve to the point at which the individual would not meet our definition of disability, considering not only the obesity, but any other impairment(s)." *Id*. The ALJ did not identify any prescribed treatment for obesity, merely referring to notes identify recommendations that Plaintiff lose weight.

The ALJ improperly relied on Plaintiff's assumed noncompliance with treatment in determining her credibility, so the case must be remanded for a new credibility assessment. On remand, the ALJ is directed to fully consider Plaintiff's testimony and the entirety of the record in compliance with the applicable directives.

## C. Vocational Expert

Plaintiff argues that the ALJ erred by failing to include necessary information in the hypothetical questions to the VE. The Commissioner argues that substantial evidence supports the ALJ's finding that Plaintiff could preform a significant number of jobs in the economy

When an ALJ relies on testimony from a VE to make a disability determination, the ALJ must incorporate all of the claimant's limitations supported by medical evidence in the record. *See Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004); *see also Kasarsky v. Barnhart*,

335 F.3d 539, 543 (7th Cir. 2003) ("Furthermore, to the extent the ALJ relies on testimony from a vocational expert, the question posed to the expert must incorporate all relevant limitations from which the claimant suffers.") (citation omitted). If the VE is unaware of all of the Plaintiff's limitations, he may refer to jobs the Plaintiff cannot perform. *Kasarsky*, 335 F.3d at 543.

In this case, the ALJ posed two hypothetical scenarios to the VE. The first addressed whether an individual could perform light work with certain limitations, including avoiding concentrated exposure to irritants such as fumes, odors, dust, gases, poorly ventilated areas and extreme heat or cold. AR 52. The second contained nearly identical limitations, including the same limitation to avoid concentrated exposure to irritants, except the person could only perform sedentary work with a sit/stand option every hour. AR 53. The ALJ concluded that Plaintiff is "not able to work around . . . pulmonary irritants such as fumes, dust, odors, gasses, and poorly ventilated areas or extreme heat or cold." AR 71. Plaintiff argues that the hypothetical question to the VE was insufficient, since the difference between "avoiding concentrated exposure to" and "not able to work around" is significant.

The case is being remanded for other reasons described above, and new VE testimony will need to be obtained based on the appropriate RFC findings. The ALJ is cautioned that he must incorporate all relevant limitations in his questioning of the VE.

## CONCLUSION

Based on the foregoing, the Court hereby **GRANTS** the relief requested in Plaintiff's Brief in Support of Reversal of Commissioner's Final Decision [DE 18] and **REMANDS** this matter for further proceedings consistent with this opinion.

SO ORDERED this 31st day of March, 2014.

                                                  s/ John E. Martin  
                                                  MAGISTRATE JUDGE JOHN E. MARTIN  
                                                  UNITED STATES DISTRICT COURT

cc:     All counsel of record